**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNIMED INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> FOX NEWS NETWORK, LLC, <br><br> Defendant. | Civil Action No. 20-17335 (SDW)(LDW) <br><br> **OPINION** <br><br><br> April 6, 2021 |

**WIGENTON**, District Judge.

Before this Court is Defendant Fox News Network, LLC's ("Defendant") Motion to Dismiss Unimed International, Inc.'s ("Plaintiff" or "Unimed") Complaint (D.E. 1 ("Compl.")) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391(b). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendant's Motion is **DENIED.**

**I.   BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a company that markets and sells antioxidant products. (Compl. ¶ 18.) From 2009 to 2017, Plaintiff purchased advertising timeslots ("Timeslots") on Defendant's networks through an intermediary company, which worked alongside another third-party entity (collectively, the "Advertising Companies") to execute sales with Defendant. (*Id.*, ¶¶ 4, 22-28.) During those eight years, Plaintiff's advertising campaigns with Defendant were "successful" at achieving Plaintiff's goals of increasing sales and "brand exposure," until Defendant cut off Plaintiff's advertising in a "sudden" "black-out" (the "Cancellation"). (*Id.*, ¶¶ 4, 21-28.) In the

aftermath, Defendant insisted that Plaintiff pay an unsubstantiated charge of $719,210.75, refused to reinstate Plaintiff's campaign,[1] and repeatedly provided Plaintiff with "conflicting ledgers" of the alleged debt. (*Id.*, ¶¶ 5-9, 35-39, 44-50.)  Plaintiff refused to pay the erroneous charge. (*See id.* ¶¶ 37, 47.)

Plaintiff alleges that the inflated charge arose from a deceptive accounting scheme, where Defendant and the Advertising Companies solicited client payments for individual Timeslots, but "siphon[ed]" those funds in order to apply bulk payments to "delinquent" accounts using mixed funds from multiple sources. (*Id.*, ¶¶ 6-8, 31-46 (citing email from Defendant's then-CFO discussing these practices).)  By keeping their "most delinquent accounts on-air," Defendant's sales team could inflate its list of "paying advertisers" and "earn[] higher commissions," which were based on the "number of advertisers associated with a given salesperson and the projected cost of those advertisements." (*Id.*, ¶¶ 6-9, 29-34.)  Plaintiff also alleges that when Defendant diverted funds from paying accounts, it did so without using "accounting controls" to track the funds. (*Id.* ¶ 32.)  Defendant's sales and accounting departments hid their actions with "deceptive accounting methods," leaving few ways to "trace the money" and making it easier for Defendant and the Advertising Companies to cover their tracks. (*Id.*, ¶¶ 6-8, 32-39, 44, 50.)

On November 29, 2020, Plaintiff filed this Complaint, alleging various statutory and tort-based causes of action and seeking (1) monetary damages to compensate Plaintiff for years of lost advertising exposure and the reputational harm of being labeled "a delinquent advertiser," and (2) a declaratory judgment to resolve the alleged debt. (*Id.*, ¶¶ 55-60, 104-07, Prayer for Relief.)  On

---

[1] Plaintiff also states that, after conducting its own investigation, it determined that it owed Defendant roughly $260,000. (*See id.*, ¶ 82.)  Plaintiff avers that it attempted to pay the accurate balance on its account, but its attempts were repeatedly denied. (*Id.* ¶¶ 54; D.E. 18 at 6.)  Plaintiff alleges that Defendant likely refused to accept these payments out of "concern[]" that it would alert other advertisers to Defendant's practice of "misappl[ying] … funds." (*Id.* ¶ 9.)

2

January 14, 2021, Defendant filed a Motion to Dismiss ("Motion") pursuant to Rule 12(b)(6). (D.E. 12-1 ("Br.").) All briefing was timely filed. (*See* D.E. 18; D.E. 19.)

## II.  LEGAL STANDARD

When ruling on a motion to dismiss under Rule 12(b)(6), this Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). An adequate complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must … raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted).

Pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

## III.  DISCUSSION

### A.  The New Jersey Consumer Fraud Act ("NJCFA")

3

### i. Unlawful Conduct And Ascertainable Loss

To assert a claim for relief under the NJCFA, Plaintiff must demonstrate: (1) unlawful conduct by Defendant, (2) an ascertainable loss on Plaintiff's part, and (3) a causal relationship between the unlawful conduct and the loss.[2] *Katz v. Live Nation, Inc.*, Civ. No. 09-3740, 2010 WL 2539686, at *4 (D.N.J. June 17, 2010) (citation omitted); N.J.S.A. § 56:8-2. The NJCFA is interpreted liberally, and whether it applies in a particular case "hinges on the nature of [the] transaction." *See Papergraphics Intern., Inc. v. Correa*, 389 N.J. Super. 8, 13 (App. Div. 2006). The statute defines "unlawful practice" as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale ... or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. 56:8–2. An "unconscionable commercial practice" is considered an "affirmative act" and "need not allege an affirmative fraudulent statement, representation, or omission." *Compare Katz*, 2010 WL 2539686, at *5 (citations omitted) *with* Br. at 6. Overall, "the prime ingredient" of such a practice is whether it has the "capacity to mislead." *Fenwick v. Kay Am. Jeep, Inc.*, 72 N.J. 372, 372 (1977).

Here, the Complaint sufficiently alleges unconscionable commercial practices by describing a scheme where Plaintiff purchased the Timeslots under the assumption that its funds would be applied to its own advertising campaign, but instead Defendant diverted those funds, announced the Cancellation, and drastically inflated Plaintiff's bill. (*See* Compl. ¶¶ 53-72.) Plaintiff also plausibly alleges a "demonstrable" loss. *Thiedemann v. Mercedes-Benz USA, LLC*,

---

[2] Defendant disputes the first two elements, unlawful conduct and ascertainable loss, and also takes issue with whether, pursuant to the statute, Plaintiff is a "consumer" and the Timeslots are "merchandise." (*See* Br. at 6.)

183 N.J. 234, 255 (2005). "An 'estimate of damages, calculated within a reasonable degree of certainty'" is sufficient to demonstrate ascertainable loss, *id*. at 249, and those damages do not need to "be monetary," *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 335 (D.N.J. 2014). Thus, Plaintiff's allegations regarding "lost profits, lost customers, and lost future business earnings" are sufficient to state a claim for relief. *See Cold Star Sales & Leasing, Inc. v. TRU Aseptics, LLC*, Civ. No. 19-14030, 2020 WL 1910334, at *7 (D.N.J. Apr. 17, 2020).

### ii. The NJCFA's "Consumer" Requirement

Pursuant to the NJCFA, a purchasing entity must also demonstrate that it is a "consumer." *See CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, Civ. No. 15-3103, 2020 WL 5743072, at *15 (D.N.J. Sept. 25, 2020); N.J.S.A. 56:8-1(d) (defining "person" to include business entities). Although the NJCFA does not further define this term, "[i]f the business itself consumes or uses the goods and services, as opposed to ... purchasing them for resale, designs, and franchises, the transaction may be covered by the NJCFA." *CDK Glob., LLC*, 2020 WL 5743072 at *15. Here, Plaintiff adequately pleads that it met the statutory prerequisites for protection. As a party may still qualify as a "consumer" if it purchased the merchandise in question "indirect[ly]," Plaintiff's purchase through the Advertising Companies is not a bar to relief. *See Bianchi v. Lazy Days R.V. Ctr., Inc.*, Civ. No. 06-1979, 2007 WL 1959268, at *3 (D.N.J. July 5, 2007). Additionally, Plaintiff was acting as an end-user, rather than as a wholesaler or reseller. (Compl. ¶¶ 20-26.) The Complaint also suggests that Defendant held, at minimum, indirect influence over the Timeslot sales. (*See id*.) Given these allegations, it would be premature to adopt Defendant's factual stylization of the parties' relationship as one that falls outside the NJCFA. (*See* Br. at 5.)

### iii. The NJCFA's "Merchandise" Requirement

5

"Merchandise" is defined as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. § 56:8-1(c). The NJCFA "applies to products that, although expensive, uncommon, or only suited to the needs of a limited clientele, are nevertheless available to the public at large." *Prescription Counter v. AmerisourceBergen Corp.*, Civ. No. 04-5802, 2007 WL 3511301, at *14 (D.N.J. Nov. 14, 2007). In a "business-to-business transaction," this Court must also assess four additional factors:

> (1) [T]he complexity of the transaction, taking into account any negotiation, bidding, or request for proposals process; (2) the identity and sophistication of the parties, which includes whether the parties received legal or expert assistance in the development or execution of the transaction; (3) the nature of the relationship between the parties and whether there was any relevant underlying understanding or prior transactions between the parties; and, as previously noted; (4) the public availability of the subject merchandise.

*All the Way Towing, LLC v. Bucks Cty. Int'l, Inc.*, 236 N.J. 431, 447-48 (2019).

When Plaintiff purchased the individual Timeslots, it did not purchase a wholly intangible concept or highly sophisticated "processing system," *cf. Princeton Healthcare System v. Netsmart N.Y., Inc.*, 422 N.J. Super. 467 (N.J. Super. Ct. App. Div. 2011), but rather selected specific airtime during which to broadcast advertisements. (Compl. ¶¶ 20-26.) Plaintiff was the end-user of that airtime, and once an individual advertisement was aired that slot presumably could not be resold. (*See id.*) As for the *All The Way Towing* factors, the Complaint does not include the factual allegations regarding complexity suggested by Defendants, and the parties' multi-year relationship, without more, is not proof that Plaintiff was highly sophisticated.[3] (*Compare* Br. at 6 *with* Compl.) Thus, Plaintiff sufficiently pleads its NJCFA claim.

---

[3] Any remaining factual disputes are "better left for summary judgment or trial." *See Premier Health Assocs., LLC v. Med. Tech. Sols.*, Civ. No. 17-331, 2018 WL 4043289, at *4 (D.N.J. Aug. 24, 2018) (collecting cases); *Hatteras Press, Inc. v. Avanti Computer Sys. Ltd.*, Civ. No. 16-5420, 2017 WL 2838349, at *3 (D.N.J. June 30, 2017) (courts "evaluating [the sophistication of parties] have generally relied on discovery records"). The same is true for the factual arguments that appear elsewhere in Defendant's briefing, including those regarding Defendant's interpretation of the alleged "interference," and Defendant's allegations regarding the import of Plaintiff's alleged debt. (*See* Br. at 8-9.)

### B. Tortious Interference

To establish tortious interference with prospective economic advantage, Plaintiff must allege "a reasonable expectation of advantage from a prospective contractual or economic relationship,[4] that defendant interfered with this advantage intentionally and without justification or excuse, that the interference caused the loss of the expected advantage, and that the injury caused damage."  *Patel v. Soriano*, 369 N.J. Super. 192, 242 (App. Div. 2004) (citation omitted). "Although earlier cases in this district required plaintiffs to plead with sufficient specificity the prospective economic advantage with which a defendant allegedly interfered, recent cases have not required such specificity." *N. Star Mgmt., Inc. v. Ins. Pros., Inc.*, Civ. No. 12-3839, 2013 WL 5334412, at *4 (D.N.J. Sept. 23, 2013) (citation omitted).  As for intent, malicious actions are those which were inflicted intentionally and "without justification or excuse." *See, e.g.*, *Rainier's Dairies v. Raritan Valley Farms, Inc.*, 19 N.J. 552, 563 (1955) (citation omitted).

Here, Plaintiff sufficiently alleges a prospective "economic advantage from continued advertising on Fox News's networks." (Compl. ¶ 74.) As the Complaint seems to assert that eight years of advertising with Defendant had been "success[ful]," it is plausible that Plaintiff will be able to substantiate non-speculative lost customers, advertising opportunities, and profits. (*Id.*, ¶ 4.) Plaintiff's assertions of malice are also sufficient. (*Id.*, ¶ 4, Prayer for Relief.) The Complaint alleges that Defendant acted intentionally to "blacklist[]" Defendant (*id.*, ¶ 75) and refused to accept payment in order to artificially inflate commissions and obscure its advertising malpractice (*id.*, ¶¶ 7-9; D.E. 18 at 6-7.) Accepting these allegations as true, Plaintiff has sufficiently pleaded its claim.

### C. Conversion

---

[4] Defendant takes issue with whether Plaintiff has sufficiently alleged a prospective contractual relationship, and whether Plaintiff has sufficiently alleged malicious intent. (*See* Br. at 8.)

7

To survive dismissal, Plaintiff's conversion claim must demonstrate: "(1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant." *Marketvision/Gateway Research., Inc. v. Priority Pay Payroll, LLC*, Civ. No. 10-1537, 2011 WL 1640459, at *14 (D.N.J. May 2, 2011) (citation omitted); *see Bloom v. AARP, Inc.*, Civ. No. 18-2788, 2018 WL 10152230, at *3 (D.N.J. Nov. 30, 2018). The Complaint asserts that Plaintiff entrusted Defendant with specific, traceable funds and that Plaintiff retained "a right to possession" of those funds, which Defendant wrongfully diverted.[5] (Compl. ¶¶ 80-85.) Plaintiff also asserts that it repeatedly requested information regarding its funds, but this information was withheld. (Compl. ¶¶ 39, 50-56.) Thus, making all reasonable inferences in Plaintiff's favor, the Complaint states a plausible claim for conversion.

### D. Negligence

A negligence claim requires establishing four elements: "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 212 N.J. 576, 594 (2013). Before imposing a duty of care, a court must assess "fairness and policy" considerations, including "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 326 (D.N.J. 2015) (citation omitted). This assessment requires considering the "factual nature" of the claims, which is sometimes better "suited for the summary judgment stage." *See Greenberger v. Varus Ventures LLC*, Civ. No. 13-

---

[5] Given the early stage of litigation, and the allegations in the Complaint regarding widespread and repeated diversion of funds over an eight-year advertising relationship, this Court will credit Plaintiff's assertions regarding its right to demand back the funds before they were applied to the Timeslots. (*See* Compl. ¶¶ 80-85.) Post-discovery, Plaintiff will be required to further substantiate its right to immediate possession of the allegedly converted funds. Defendant is clearly on notice of the allegations raised against it, and Plaintiff has presented a plausible narrative of wrongdoing.

7920, 2014 WL 6991993, at *7 (D.N.J. Dec. 10, 2014) (discussing duty of care in the fiduciary duty context).

At this stage, the Complaint plausibly alleges that after Defendant solicited Plaintiff's business (*id.* ¶¶ 12, 86-92), it owed Plaintiff a duty of care, (*see id.*, ¶¶ 12; 7, 32, 43 (alleging violations of professional accounting standards)). Plaintiff advertised with Defendant under the assumption that Defendant's accounting department would "take precautions to ensure" funds were "properly accounted for." (*Id.*, ¶ 88.) Defendant's failure to employ any such controls foreseeably caused harm to Plaintiff. (*See generally id.*) The same is true for proximate cause: it is plausible to assume that "but for" Defendant's actions, Plaintiff would not have suffered the damages described in the Complaint. (*Id.*)

### E. Civil Conspiracy

In New Jersey, a civil conspiracy requires: "(1) combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose to be achieved by unlawful means; and (4) special damages." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998) (citation omitted). "[W]hile 'pure speculation' is of course insufficient, 'circumstantial evidence will suffice' to find the existence of a civil conspiracy." *Adkins v. Sogliuzzo*, Civ. No. 09-1123, 2013 WL 5468970, at *16 (D.N.J. Sept. 30, 2013). As for special damages, "lost profits" will survive dismissal as long as they are sufficiently stated. *See Svigals v. Lourdes Imaging Assocs., P.A.*, Civ. No. 18-1736, 2018 WL 6178863, at *10 (D.N.J. Nov. 27, 2018) (citation omitted).

This Court has determined that Counts I-IV state plausible claims for relief. (*See supra* 4-9.) Thus, Plaintiff's conspiracy claim also survives dismissal. Plaintiff's special damages allegations are also sufficiently specified. (*See, e.g., id.* ¶¶ 60 (averring that due to Defendant's

9

actions, Plaintiff was labeled a "delinquent advertiser" in the industry), 103 (alleging Defendant's actions caused Plaintiff to "los[e] years" of "advertising exposure" and "concomitant profits").)

### F. Declaratory Relief

Declaratory relief may only be issued as to a "live controversy" and cannot be used "to discern the rights or status of parties upon a state of facts that are future, contingent, and uncertain." *Indep. Realty Co. v. Twp. Of N. Bergen*, 376 N.J. Super. 295, 302 (App. Div. 2005) (citation omitted). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Here, the Complaint alleges a sufficiently "live" controversy.[6] Plaintiff avers that Defendant has repeatedly refused to accept payment for the alleged debt. (Compl. ¶ 68.) Thus, the issue has not been "resolved." (*Id.*, ¶¶ 105-06.) Moreover, it is plausible that a massive media entity that claims it is owed over $700,000 may seek to enforce that debt or retain it for leverage. (*Compare* Br. at 11-12 *with* D.E. 18 at 36-37.) Plaintiff also plausibly articulates an ongoing "fear" regarding continued reputational damage due to the alleged debt. (*See* Compl. ¶¶ 60, 106.).

### IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is **DENIED**. An appropriate order follows.

    /s/ Susan D. Wigenton
SUSAN D. WIGENTON, U.S.D.J

Orig:      Clerk
cc:        Leda D. Wettre, U.S.M.J.
            Parties

---

[6] The cases cited by Defendant do not change this conclusion. *See, e.g.*, *Donadio v. Cunningham*, 58 N.J. 309, 325, 277 A.2d 375 (1971) (requesting an "abstract declaration" that a statute was unconstitutional); *Mountbatten Sur. Co. v. Brunswick Ins. Agency*, 2000 WL 1042816, *Levy-Tatum v. Navient Solutions, Inc.*, 183 F. Supp. 3d 701, 711 (E.D. Pa. 2016) (finding no live controversy where bonds included a condition precedent that had not occurred).