**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNIMED INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> FOX NEWS NETWORK, LLC, <br><br> Defendant. | Case No. 20cv17335 (EP) (JRA) <br><br> **MEMORANDUM ORDER** |

**PADIN, District Judge.**

Plaintiff Unimed International, Inc. ("Unimed") moves for reconsideration, D.E. 107, of the Court's December 2023 Order, D.E. 105 ("December 2023 Order"), partially granting Defendant Fox News Network, LLC's ("Fox") motion for summary judgment, D.E. 87, and denying Unimed's motion for partial summary judgment, D.E. 84. The Court decides this motion on the papers. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b). For the reasons set forth below, Unimed's reconsideration motion will be **DENIED**.

## I.   BACKGROUND

The parties' familiarity with the complete background of this matter is presumed. *See* D.E. 104 ("December 2023 Opinion") at 1-5 (background set forth at length). Thus, only the background necessary to resolve the pending motion is laid out here.

The claims in this matter stem from a payment dispute between Unimed and Fox, following Fox's decision to stop airing Unimed's advertisements on Fox's television networks due to months of non-payment for advertisement timeslots. *See* D.E.s 1, 23. Unimed and Fox did not have direct relationship. Instead, the process by which Unimed would purchase advertisement timeslots on Fox's television networks can be simplified as follows: Unimed would submit requests for

advertisement timeslots to Synergixx LLC[1] (a media and advertising agency); Synergixx would then submit Unimed's requests to More Media, Inc.[2] (a media buying agency); More Media would then submit Unimed's requests to Fox; if Fox accepted Unimed's requests, Fox would send a corresponding invoice to More Media; More Media would then reconcile the invoice, generate an invoice of its own, and send the new invoice to Synergixx; Synergixx would then reconcile the invoice it received, generate an invoice of its own, and send the new invoice to Unimed; and finally payment would theoretically flow from Unimed to Synergixx to More Media to Fox. *See* December 2023 Opinion at 2-3 (citations omitted). Between January 2017 and March 2017, Fox repeatedly notified More Media that invoices for three of its clients, including Unimed, dating back to October 2016, were delinquent. *Id.* at 3 (citations omitted). In March 2017, due to the delinquent invoices, Fox placed a credit hold on the accounts of More Media's three clients, including Unimed, and Fox stopped airing Unimed's advertisements on its networks. *Id.* at 3-4 (citations omitted).

The December 2023 Order denied Unimed's motion for partial summary judgment with respect to its claim for declaratory judgment; denied Fox's motion for summary judgment with respect to Fox's breach of contract counterclaim; and granted Fox's motion for summary judgment dismissing Unimed's New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2, tortious interference with prospective economic advantage, negligence, civil conspiracy, declaratory judgment, and

---

[1] Referred to as "Synergixx" in this Memorandum Order.
[2] Referred to as "More Media" in this Memorandum Order.

2

conversion[3] claims, as well as with respect to liability on Fox's unjust enrichment counterclaim.[4] December 2023 Opinion; December 2023 Order.

On January 3, 2024, Unimed filed the pending reconsideration motion, requesting that the Court revisit its December 2023 Order. D.E. 107-1 ("Mot."). Fox opposes. D.E. 110 ("Opp'n").

## II.   LEGAL STANDARD

Reconsideration motions are not expressly authorized by the Federal Rules of Civil Procedure. However, such motions are permitted in the District by Local Civil Rule 7.1(i) as "an extraordinary remedy that is [to be] granted 'very sparingly.'" L.Civ.R. 7.1(i) cmt. 6(d) (quoting *Brackett v. Ashcroft*, 2003 U.S. Dist. LEXIS 21312, at *5 (D.N.J. Oct. 7, 2003)). Accordingly, courts will only grant reconsideration motions in three scenarios: "(1) an intervening change in the controlling law [has occurred]; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *see also N. River Ins. Co. v. CIGNA Reinsurance, Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

But reconsideration motions "may not be used to re-litigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry" of the initial decision. *P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001). Instead, Local Civil Rule 7.1(i) requires a party to "set[] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." L.Civ.R. 7.1(i);

---

[3] At the summary judgment stage, Unimed "withdr[ew] its conversion claim." December 2023 Opinion at 15 (quoting D.E. 92 at 3 n.3).

[4] Summary judgment was not granted with respect to damages on Fox's unjust enrichment counterclaim. December 2023 Opinion; December 2023 Order.

3

*see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) ("The word 'overlooked' is the operative term[.]"); *Kraft v. Wells Fargo & Co.*, 2018 U.S. Dist. LEXIS 51199, at *6 (D.N.J. Mar. 28, 2018) (citing L.Civ.R. 7.1(i)) (noting that if a party claims something was "overlooked," it must be related to "some dispositive factual or legal matter"). Finally, mere disagreement with a court's decision is insufficient to meet the standard for reconsideration motions. *Kraft*, 2018 U.S. Dist. LEXIS 51199, at *6 (citations and quotation marks omitted); *see also Schiano v. MBNA Corp.*, 2006 U.S. Dist. LEXIS 93578, at *5 (D.N.J. Dec. 27, 2006) (citations omitted) ("Mere disagreement with the [c]ourt will not suffice to show that the [c]ourt overlooked relevant facts or controlling law . . . .").

## III. DISCUSSION

Unimed does not assert any intervening change in the law or new evidence. Instead, Unimed claims that reconsideration is appropriate with respect to its declaratory judgment, tortious interference with prospective economic advantage, negligence, and civil conspiracy claims to correct a clear factual error.[5] Mot. at 1. Specifically, Unimed finds issue with the Court's finding that Fox applied payments it received from More Media to specific invoices—and advertisers—based on More Media's allocation instructions, because the lynchpin holding Unimed's entire case together is its position that Fox misapplied Unimed's payments.[6] *See id.* at 1-2, 4. Thus, Unimed, as it did at the summary judgment stage, attempts to lead the Court to a conclusion that it already considered and found is unsupported by the record. *See Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (reconsideration motions "are not to be used as an opportunity to relitigate the case").

---

[5] Unimed does not seek reconsideration of the portion of the December 2023 Order granting summary judgment in Fox's favor with respect to Unimed's New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2, *see* December 2023 Opinion at 10-12.

[6] Payments that Unimed did not make directly to Fox, but rather made to Synergixx, who then made payments to More Media, who then made payments to Fox.

4

Unimed unconvincingly argues that the record evidence demonstrates that Fox frequently did not have allocation instructions from More Media. Mot. at 4. Unimed points to Efinger,[7] Rojas,[8] and Listerman's[9] testimony. *See id.* at 4-6. With respect to Efinger's testimony, Unimed points to Efinger's statement that not all of More Media's allocation instructions were very specific, as "[t]here were some e-mails that were giving guidance but in a generic manner." *See id.* at 4-5 (citing D.E. 85-3, Ex. B). But even vague or generic instructions are still instructions. That More Media's instructions were not always "very specific" does not dispute the record evidence supporting the fact that Fox sought out allocations instructions from More Media and relied on those instructions, even if "vague" or only provided "general guidance," in applying payments to specific invoices. *See* December 2023 Opinion at 13-15, 17-18 (citing record evidence demonstrating Fox applied payments based on More Media's allocation instructions); D.E. 85-3, Ex. B at 247:8-12 (Efinger testifying, "[w]e [(Fox)] always relied on instructions from the agency [(*i.e.*, More Media)], because when you get to an escalation issue, you really want to be able to identify how payments should be applied"); *id.* at 232:6-14 (emphasis added) (Efinger testifying that when More Media submitted payments without instructions, "[i]t means you need to record that as a prepayment and *reach out* to More Media [] in order to understand how that [payment] should be applied"); *id.* at 232:19-233:6 (Efinger agreeing that when More Media submitted payments without instructions, Fox needed to reach out to More Media for allocation instructions); *id.* at 233:10-23 (Efinger testifying that "Fox could not, and they would not[,]" take payment received from More Media and unilaterally choose to pay it towards another invoice); *id.* at 240:8-19 (Efinger testifying that even where More Media provided instructions, "unless the

---

[7] Fox employee.
[8] Fox employee.
[9] Fox Chief Financial Officer.

5

math tied out exactly and the instructions were clear, we would still need to go back to them [(More Media)] to understand how those payments should be allocated"); *id.* at 241:6-242:14 (Efinger acknowledging that More Media "gave pretty vague instructions. But [More Media] did give instructions," "it was hard to find concise instructions," More Media "never gave specific instructions," and "[t]here were some e-mails [from More Media] that were giving guidance but in a generic manner," but no hint that Fox did not seek allocation instructions or that it unilaterally applied funds without any instructions from More Media).

With respect to Rojas's testimony, Unimed claims that Fox had its own policy on what to do in the absence of specific allocation instructions, such that any claim that Fox always had allocation instructions from More Media must be undermined. Mot. at 6 (citing D.E. 85-3, Ex. C). But Unimed, as it did at the summary judgment stage, glosses over Rojas's testimony that when Fox received payments from More Media without allocation instructions, Fox took steps to obtain allocation instructions, and, even when the allocation instructions received were vague, Fox applied the payments according to those instructions. *See* December 2023 Opinion at 13-15, 17-18 (citing record evidence demonstrating Fox applied payments based on More Media's instructions); D.E. 85-3, Ex. C at 157:2-162:21 (Rojas seeking out allocation instructions with respect to money received from More Media, acknowledging that More Media's allocation instructions instructed Fox to "go ahead and apply [the money] how they [(Fox)] want and if I ([More Media)] see any issues when I review, I can let you [(Fox)] know," and confirming that given those allocation instructions accompanying bulk payments, Fox "would apply the payments to the oldest invoices . . . ."). That Fox applied bulk payments it received from More Media to the oldest accounts is not irreconcilable with the fact that allocation instructions were given by More

6

Media; it merely reiterates that More Media's allocation instructions were not always very specific, but this fact does not support a theory that Fox was misapplying payments.

With respect to Listerman's testimony, Unimed argues that if Fox always had and followed More Media's allocation instructions, then Fox should have easily been able to explain how payments were applied to Unimed's account. Mot. at 6 (citing D.E. 85-3, Ex. N). However, what Listerman's testimony establishes is that More Media sent bulk payments, and therefore, determining what More Media received from each client, and subsequently sent to Fox, requires More Media's assistance.[10] What Listerman's testimony does not establish is that Fox applied those bulk payments without any allocation instructions. In fact, with respect to those bulk payments, Listerman states, "More Media provided us guidance as to which open invoices (across their multiple clients) to apply the cash payments to." D.E. 85-3, Ex. N. Despite Unimed's argument that "guidance" and "instructions" are distinct terms, the two terms are synonyms. *See Guidance*, MERRIAM-WEBSTER THESAURUS, https://www.merriam-webster.com/thesaurus/guidance (last accessed March 27, 2024) (identifying instruction as synonym of guidance).

Moreover, while Unimed argues that a reasonable jury could find that there is no way to follow vague allocation instructions, Unimed points to no record evidence to support this argument. *See* Mot. at 8-9. Notably, even when More Media provided vague allocation instructions, the record evidence suggests that More Media would have informed Fox if it had any issues with the allocations. *See* D.E. 85-3, Ex. C (quoting email from More Media with allocation

---

[10] Additionally, there is no dispute that Fox did not have a direct relationship with Unimed, but rather Fox had a direct relationship with More Media, More Media had a direct relationship with Synergixx, and Synergixx had a direct relationship with Unimed. Thus, that More Media's assistance would be necessary to reconcile what payments it received and sent to Fox is logical.

7

instructions, Fox "can go ahead and apply how they want and if I see any issues when I review I can let you know"). Thus, this argument fails.

Based on the foregoing, Unimed has pointed to no clear error of fact with respect to the Court's conclusion that Fox applied payments received from More Media according to More Media's allocation instructions, as even "vague" allocation instructions are still instructions. Therefore, as the basis of Unimed's reconsideration motion hinges on the Court's analysis of the allocation instructions, which will not be disturbed, the motion will be denied.[11] [12]

## IV.  CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS**, on this 9 day of April, 2024;

**ORDERED** that Plaintiff Unimed International, Inc.'s reconsideration motion, D.E. 107, is **DENIED**.

Dated: April 9, 2024

Evelyn Padin, U.S.D.J.

---

[11] *See* Mot. 9-14 (hinging remaining reconsideration arguments on the Court's analysis of the allocation instructions).

[12] Unimed raises only one additional argument: if the Court denies reconsideration with respect to its conclusion concerning the allocation instructions, the Court should reconsider its decision as to the amount owed on Fox's unjust enrichment counterclaim and enter a final judgment. Mot. at 14-15. Unimed points to no clear error of law or fact that would merit reconsideration of the Court's conclusion that a material issue of fact persists with respect to the exact amount Fox is owed. *See* December 2023 Opinion at 3-5, 24 (noting Fox's account history reports and outstanding invoices showed an outstanding balance of $719,210.75, but Unimed acknowledged an outstanding balance of approximately $200,000). Therefore, the Court will not disturb its holding with respect to Fox's unjust enrichment counterclaim.